BLACK PERSONS, the SUPER oF WHICH, IS NAMED, ABE BURTON. OTHER IMPLICATIONS RESULT IN "WELL KNOWN" PERSONS SUCH AS MOVIE STARS AND GOVERNMENT OFFICIALS BOTH AT THIS PRIVATE HOUSE ADDRESS AND AT 72 BARROW STREET, N.Y.C. EXTREME TORTURE WITH INTIMIDATION.

CONTINUED...

**AMVEST CAPITAL CORPORATION, a Virginia corporation, Plaintiff,**

v.

**BANCO CENTRAL, S.A., Defendant.**

**AMVEST CAPITAL CORPORATION, a Virginia corporation, Plaintiff,**

v.

**BANCO EXTERIOR DE ESPANA, S.A., Defendant.**

Nos. 85 Civ. 7895 (LBS), 85 Civ. 7896 (LBS).

United States District Court, S.D. New York.

Jan. 29, 1986.

Hunton & Williams, New York City, for plaintiff; Jack E. McClard, of counsel.

Akerman, Senterfitt & Eidson, Miami, Fla., for defendant Banco Central, S.A.; Stanley H. Wakshlag, of counsel.

Sage Gray Todd & Sims, New York City, for defendant Banco Exterior de Espana, S.A.; Jerry J. Strochlic, of counsel.

## OPINION

SAND, District Judge.

These two actions, which are related but not consolidated, are brought by AMVEST Capital Corp. ("AMVEST") against Banco Central and Banco Exterior de Espana ("Banco Exterior") respectively. AMVEST alleges that the defendant in each case engaged in certain business transactions with Jose Mayoral ("Mayoral"), a former AMVEST vice-president, resulting in a fraud against AMVEST. Jurisdiction is based upon federal question jurisdiction, 28 U.S.C. § 1331, and upon diversity of citizenship, 28 U.S.C. § 1332(a)(2).

Each defendant now moves pursuant to 28 U.S.C. § 1404(a) for an order transferring this case from the Southern District of New York ("S.D.N.Y.") to the Southern District of Florida ("S.D.Fla."). The motions are granted.

> Section 1404(a) of 28 U.S.C. provides: For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Apparently, the parties do not dispute that the action could have been brought in the S.D.Fla. pursuant to the laws relating to personal jurisdiction and the venue provisions of 28 U.S.C. §§ 1391(b), (c) & (d). Thus, the question for our determination is whether such a transfer would be "[f]or the convenience of parties and witnesses, [and] in the interest of justice."

While as a general matter the plaintiff's choice of forum is a "substantial consideration," *Olinick & Sons v. Dempster Bros.*, 365 F.2d 439, 444 (2d Cir.1966); *see also Golconda Mining Corp. v. Herlands*, 365 F.2d 856, 857 (2d Cir.1966), where the "plaintiff sues in a forum which is neither its home nor has any ties to the controversy, plaintiff's choice is to be accorded less weight than would ordinarily be the case." *Wibau, Westdeutsche Industrie Und Strassenbaumachinengesellschaft v. American Hoist & Derrick Co.*, 293 F.Supp. 273, 275 (S.D.N.Y.1968); *Ross v. Tioga Gen'l Hosp.*, 293 F.Supp. 209, 211 (S.D.N.Y.1968). The parties agree that the S.D.N.Y. has no ties to the controversy giving rise to these suits, Transcript of Oral Argument ("Tr.") at 8, and both Banco Central and Banco Exterior have stated that the acts the defendants are alleged to have committed took place, if anywhere, in the S.D.Fla. Tr. at 6; Affidavit of Julian Perea at ¶ 13; Affidavit of Jose Manuel Varela Una at ¶ ¶ 6–7.

Moreover, despite AMVEST's statements to the contrary, the S.D.N.Y. is not a home forum for AMVEST. AMVEST states repeatedly that it is a "resident" of New York, specifically the S.D.N.Y. *See, e.g.*, Plaintiff's Memorandum of Law in Opposition to Banco Central's Motions to Transfer ("Plaintiff's Memo.") at 2, 5, 7, 10 & 25. AMVEST bases this contention on the fact that even though AMVEST is incorporated in Virginia and has its principal place of business there, it maintains an office in the S.D.N.Y., where it is authorized to and indeed does transact business. *See* Affidavit of James R. Hicks, Jr., at ¶ ¶ 3–4; Plaintiff's Memo. at 5.

The problem with this reasoning, however, is that even though such contacts might suffice to make AMVEST a "resident" for purposes of defending a law suit, they do not qualify it as a "resident" so that plaintiff AMVEST can consider the S.D.N.Y. its "home" forum. Section 1391 of Title 28 of the United States Code contains the general venue provisions. Section 1391(c), regarding corporate defendants, states that "[a] corporation may be sued in any judicial district in which it is incorporated or *licensed to do business or is doing business*, and such judicial district shall be regarded as the residence of such corporation for venue purposes." (Emphasis added.) However, the Second Circuit and

the other courts that have decided the issue have declined to extend this expansive concept of "residence" to cases where corporations are suing as *plaintiffs*. *Manchester Modes v. Schuman*, 426 F.2d 629, 630 (2d Cir.1970); *see also* 15 Wright & Miller, *Fed.Prac. & Proc.* § 3811 at 60–61 (1976). The Second Circuit found that the "broadened conception of residence for corporate defendants [that is found in 28 U.S.C. § 1391(c)] was 'a response to a general conviction that it was "intolerable if the traditional concepts of 'residence' and 'presence' kept a corporation from being sued wherever it was creating liabilities"'" [citations omitted]. There is no evidence of similar concern over the problem of venue for corporate plaintiffs." *Manchester Modes, supra*, 426 F.2d at 632.

If, for purposes of section 1391 of 28 U.S.C., a corporate plaintiff cannot establish itself as a "resident" of a district solely by doing business there, it follows that the same corporate plaintiff cannot by mere dint of doing business establish itself as a "resident" for purposes of section 1404(a) of 28 U.S.C. To allow otherwise would give corporate plaintiffs the same advantage with respect to changes in venue that *Manchester Modes* said they were not entitled to with respect to the establishment of venue. This is not to say that a corporate plaintiff's "doing business" in a district is not a factor in determining whether to transfer pursuant to § 1404(a). Rather, it is to say that the corporate plaintiff cannot resist the transfer on the ordinarily compelling ground that the forum it chose is its "home."

■ When the facts and circumstances of the cases here are examined in light of our findings that the controversy did not arise in the S.D.N.Y. it becomes clear that the S.D.Fla is the more appropriate forum for these actions. The fact that the S.D. N.Y. is not plaintiff's residence is not nec-essary to this conclusion, but certainly bolsters it.

With regard to the interest of the parties and the witnesses, in the *Banco Central* case, AMVEST has named one potential witness who resides in the S.D.N.Y. and two witnesses from the S.D.Fla. The remainder of its witnesses come from Charlottesville, Va. Banco Central, on the other hand, has identified several party witnesses and two dozen non-party witnesses who reside in the S.D.Fla. Perea Aff. at ¶¶ 13–14. While AMVEST disputes several aspects of Banco Central's witness list, it concedes that Banco Central has at least 13 witnesses from the S.D.Fla. Plaintiff's Memo. at 15. Clearly, from the perspective of the witnesses, it is far more convenient to hold the trial in the S.D.Fla. Nor are we persuaded by AMVEST's arguments that it is more convenient for the majority of its witnesses to travel from Virginia to the S.D.N.Y., rather than to the S.D.Fla. The marginal inconvenience of the longer trip to Florida is outweighed by the fact that nearly 20 witnesses will not have to travel at all. *Accord Kyle v. Days Inn of America*, 550 F.Supp. 368, 370 (M.D.Penn.1982). The witness situation in the *Banco Exterior* case is similar.[1]

Finally, with respect to witnesses, Banco Central's Florida-based, non-party witnesses cannot be compelled to testify in the S.D.N.Y. and there has been no showing by AMVEST that they are likely to appear voluntarily. *Accord Vaughn v. American Basketball Ass'n*, 419 F.Supp. 1274, 1276 (S.D.N.Y.1976).

Several other reasons, which might be deemed "in the interest of justice," call for the transfer of these cases to the S.D.Fla. Whereas virtually all the significant events took place in Florida and whereas several of AMVEST's claims are based on Florida statutory and common law, a federal district court sitting there is better suited to apply the local law. A federal court in the

---

1. The parties in both cases agree that if one action is transferred, the other should be as well. *See AMVEST's Letter of Jan. 4, 1986 at 4–5.* Since we find ample reason for transferring the *Banco Central* case, we need not discuss the *Banco Exterior* case in detail. We do note in passing that even viewed independently, the *Banco Exterior* action would also call for transfer.

S.D.Fla. has greater familiarity with Florida law as well as greater access to the resources that aid in the law's interpretation and application. *Accord Vaughn, supra,* 419 F.Supp. at 1278; *Troyer v. Karcagi,* 488 F.Supp. 1200, 1207 (S.D.N.Y.1980). Moreover, the documents relating to these disputes, even if few in number as AMVEST contends, are all in Florida. We also note, as the parties stipulated at oral argument, that the median time for disposition of civil cases and for proceeding to trial is the same in the S.D.Fla. and the S.D.N.Y. Tr. at 2–4; *see also* Plaintiff's Memo. at 9. Finally, as AMVEST is a multi-million dollar business and as it is licensed to do business in Florida and has done business there, we are not persuaded by its argument that we should look at the relative financial strength of the parties. In sum, the S.D.N.Y. has virtually no relation to this litigation and relatively little relation to the parties. A transfer of these actions to the S.D.Fla. is appropriate here.[2]

The motions of Banco Central and Banco Exterior are granted.

SO ORDERED.

---

**2.** We asked the parties to brief the issue of whether certain potential third-party defendants, namely Mayoral and the companies he controls, could be impleaded in the S.D.N.Y. on the state claims in these cases. Although the parties reach different conclusions, we need not decide this question as we have in any event found ample reason to transfer these cases to Florida.