**The ORB FACTORY, LTD., a Canadian corporation, Plaintiff,**

**v.**

**DESIGN SCIENCE TOYS, LTD., a New York corporation; and DOES 1–20, inclusive, Defendants,**

**v.**

**NOVA DESIGN GROUP, LTD., a New York corporation; Regis McCann, an individual; and DOES 1–20, inclusive, Counterclaim Defendants.**

**No. 96 Civ. 9469(RWS).**

United States District Court,
S.D. New York.

May 19, 1998.

---

DuBoff & Ross, Portland, OR (Leonard D. DuBoff, of counsel), Salon, Marrow & Dyckman, New York City (Michael H. DuBoff, of counsel), for Plaintiffs.

John James Dalton, Rhinebeck, NY, for Defendants.

Regis A. McCann, West Hurley, NY, pro se.

### OPINION

SWEET, District Judge.

Defendant Design Science Toys, Ltd. ("DST") has moved to transfer this action to the United States District Court for the Northern District of New York ("Northern District") pursuant to 28 U.S.C. § 1406(a) on the grounds that venue is improperly laid in the United States District Court for the Southern District of New York ("Southern District"), or, alternatively, pursuant to 28 U.S.C. § 1404(a) on the grounds that the transfer is required for the convenience of the parties and in the interests of justice.

For the reasons set forth below, the motion is denied.

### The Parties

The Orb Factory, Ltd. ("Orb") is a Canadian corporation that engages in the business of designing, producing, marketing, and selling toys, jewelry, and other products fashioned from manipulable metal wire, such as stainless steel. Orb's principal place of business is in Halifax, Nova Scotia.

DST is a New York corporation that manufactures toys. Its postal address is Tivoli, New York, which is in the Southern District, but, according to DST, its place of business is physically located in Columbia County, New York, which is in the Northern District.

### Relevant Third Parties

Counterclaim defendant Nova Design Group, Ltd. ("Nova") is a subsidiary of Orb. It is located in Ulster County, New York.

Counterclaim defendant Regis A. McCann ("McCann"), a natural person, is a key employee of Nova and lives in the Northern District. McCann previously worked for DST. McCann is the plaintiff in the civil action *Regis A. McCann v. Design Science Toys, Ltd. et al,* Civ.A. No. 96 CV 1224, in the Northern District.

### Prior Proceedings

Orb filed its initial complaint in the Southern District on December 17, 1996. Its First Amended Complaint ("Complaint") was filed on February 2, 1997. DST filed an Answer on February 5, 1997, and two Amended Answers, one on February 26, 1997, and the other on June 30, 1997.

DST filed its notice of motion to transfer this action to the Northern District on February 20, 1998. The motion was heard and deemed fully submitted on April 1, 1998.

### The Facts

Orb's Complaint filed in the Southern District of New York contains the following claims against DST: trademark infringement, unfair competition and false designation of origin, common law unfair competition, dilution in violation of CLS Gen.Bus. Law § 368–d, breach of fiduciary duty, and account stated.

Two of the toys/jewelry that Orb designs, markets, and sells are the Celestial Orb and the Celeste Pendant. Orb is the owner of the trademarks *Celestial Orb* and *Celeste Pendant* and has used the trademarks in interstate commerce at least as early as 1992.

The crux of Orb's Complaint alleges that DST began using the mark *Heaven's Orb,* in the Southern District and in interstate commerce, in connection with the design, production, marketing, and sale of a product identical or substantially similar to Orb's product that bears the trademark *Celestial Orb.* Likewise, Orb states that DST's use of the mark *Heaven's Pendant* is in connection with a product identical or substantially similar to Orb's product bearing the trademark *Celeste Pendant.* Orb contends that such use was without the consent or authorization of Orb.

DST's counterclaims include breach of contract, unjust enrichment and *quantum meruit* damages, breach of fiduciary duty, unfair competition, trade dress infringement, defamation, dilution in violation of Gen.Bus.Law § 368-d, and conversion.

This is not the only litigation with which DST is currently involved. On or about May 15, 1996, DST commenced an action in New York State Supreme Court, Dutchess County, against McCann, alleging unfair competition, theft and use of DST's confidential information and trade secrets, interference with business relations and contracts, wrongful disclosure of proprietary trade secrets and information, conversion of royalties, breach of contract, violation of fiduciary duty, conspiracy to unfairly compete, and conversion. McCann's attempt to remove the state action to federal court was denied on the grounds that no exclusively federal cause of action existed. The state action was stayed pending the Northern District case discussed below. Ultimately, after DST's motion to dismiss in the Northern District case was denied, the state action was dismissed without prejudice.

Before the instant action was filed, while the state action was pending, McCann commenced a civil action against DST in the Northern District alleging patent infringement, inducement to infringe, interference with prospective employment, interference with business relationships, breach of fiduciary duty, and request for declaratory judgment that McCann did not violate the rights of DST as alleged in DST's state court complaint. DST's counterclaims are similar to those it made in the action at issue. McCann makes no claim regarding Orb or Nova.

### Discussion

### I. Motion to Transfer Venue Under § 1406(a) Is Denied

██ Where a suit is filed in federal court in a district in which venue is improper, and a timely and sufficient objection to the defect is raised, a change of venue may be made under 28 U.S.C. § 1406(a) which provides:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a). A transfer under § 1406(a) is based not on the inconvenience of the transferor forum but on the impropriety of that forum. If a party's objection to venue, however, is not timely and sufficient, or if the party has waived the right to object to venue, transfer under 1406(a) is improper and unwarranted. *See Manley v. Engram,* 755 F.2d 1463, 1467 (11th Cir.1985). This is so because "[u]nlike the matter of jurisdiction venue was (and remains) a privilege personal to each [party], which can be waived, and is waived ... unless timely objection is interposed." *Concession Consultants, Inc. v. Mirisch,* 355 F.2d 369, 371 n. 1 (2d Cir.1966); *see Manley,* 755 F.2d at 1468 (noting that venue "is merely a privilege of the parties, and defects of venue may be waived by the parties").

██ Assuming *arquendo* that venue was improperly laid in the Southern District in the first instance, Rule 12(h)(1)(B) of the Federal Rules of Civil Procedure provides that the defense of improper venue is waived if it is neither raised in a pre-answer motion nor included in a responsive pleading or an amendment thereto permitted by Rule 15(a) to be made as a matter of course. DST did not file a Rule 12 motion before answering, nor did it raise the defense of improper venue in its verified answer. In fact, DST alleged proper venue in the Southern District both in its Answer and Amended Answer and

Counterclaim.[1] Additionally, both of these pleadings state, ten times to be exact, that DST's principal place of business is in the Southern District.

DST claims that this was a mistake. DST's counsel affirms that he assumed the listed postal address for DST, Tivoli, New York (which is in the Southern District), coincided with DST's actual place of business. According to DST, it is in fact physically located in Columbia County (which is in the Northern District). This mistake, asserts DST's counsel, "was predicated upon the rural, upstate New York practicalities concerning post office addresses which do not correlate to actual, physical locations." (Affirmation of John James Dalton, Esq., Supp. Def.'s Mot. to Transfer at 6.)

DST further contends, but has presented no proof, that Orb's choice of venue in the Southern District was a deliberate attempt to double DST's legal fees and defense costs, as DST is also defending an action in the Northern District. DST's claim that it discovered the mistake and/or conspiracy only recently, over one full year after DST waived any objection to venue, is unpersuasive. Over the course of that year, numerous court appearances have been made in this district and progress has been made in the case.

Given that DST failed to interpose a timely objection to venue in that it did not file a motion under Rule 12(b) or raise the defense of improper venue in its verified answer, any objection to venue has been waived. *See Mirisch*, 355 F.2d at 371; *Leif Hoegh & Co.*

v. *Alpha Motor Ways, Inc.*, 534 F.Supp. 624, 625–26 (S.D.N.Y.1982).

Once objections to venue are waived, any defect in venue is cured, and the benefits of a § 1406(a) transfer for lack of venue are no longer available. Still, DST may move, as it did here, for transfer under § 1404(a) which applies to claims for which venue is proper in this district.[2] *See Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rodger, P.C.*, 927 F.Supp. 731, 737 (S.D.N.Y.1996). As discussed below, however, § 1404(a) also fails to warrant transfer of this action to the Northern District of New York.

## II. Motion to Transfer Venue Under § 1404(a) Is Denied

### A. Legal Standard Under § 1404(a)

Section 1404(a) provides that:

For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. 1404(a). This section is a statutory recognition of the common law doctrine of *forum non conveniens* as a facet of venue in the federal courts. *Wilshire Credit Corp. v. Barrett Capital Management Corp.*, 976 F.Supp. 174, 180 (W.D.N.Y.1997). Section 1404(a) strives to prevent waste "of time, energy and money" and "to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Continental Grain Co. v. Barge FBL–585*, 364 U.S. 19, 27,

---

1. It bears mentioning that McCann proclaims that DST previously contended in the case involving McCann that the proper venue would be the Southern District of New York, because DST's corporate office was in a home in Dutchess County. DST objected to McCann's complaint being heard in the Northern District.

2. Orb asserts that the Southern District is proper venue under § 1391(b)(1) or (b)(2). Section § 1391(b) provides that:

A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, ... or (3) a judicial

district in which any defendant may be found, if there is no district in which the action may otherwise be brought.
28 U.S.C. § 1391(b).

According to Orb, a substantial portion of the alleged acts of wrongdoing by DST occurred in New York City at various trade shows and meetings between representatives of DST and third parties. As such, venue is warranted under § 1391(b)(2). Moreover, Orb contends that since corporate residency of DST is established by the sufficiency of contacts DST has with the Southern District under § 1391(c), venue is also proper under § 1391(b)(1).

Because it has been established that DST has waived any objection to venue, thereby curing the defect of improper venue, the issue of whether venue in the Southern District meets § 1391 requirements need not be reached.

80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960), *quoted in Wilshire,* 976 F.Supp. at 180.

■ " '[M]otions for transfer lie within the broad discretion of the courts and are determined upon notions of convenience and fairness on a case-by-case basis.' " *Linzer v. EMI Blackwood Music Inc.,* 904 F.Supp. 207, 216 (S.D.N.Y.1995) (*quoting In re Cuyahoga Equip. Corp.,* 980 F.2d 110, 117 (2d Cir.1992) (*citing Stewart Org. Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988))). The burden of demonstrating the desirability of transfer lies with the moving party, and in considering the motion for transfer, a court should not disturb a plaintiff's choice of forum "unless the defendants make a clear and convincing showing that the balance of convenience favors defendants' choice." *Hubbell Inc. v. Pass & Seymour, Inc.,* 883 F.Supp. 955, 962 (S.D.N.Y.1995); *see Filmline (Cross-Country) Prods., Inc. v. United Artists Corp.,* 865 F.2d 513, 521 (2d Cir.1989); *Austin v. International Bhd. of Teamsters–Airline Div. 2747,* 739 F.Supp. 206, 208 (S.D.N.Y.1990).

■ The defendant moving for transfer must, in essence, demonstrate " 'that transfer is in the best interests of the litigation.' " *Linzer,* 904 F.Supp. at 216 (*quoting Eskofot A/S v. E.I. Du Pont De Nemours & Co.,* 872 F.Supp. 81, 95 (S.D.N.Y.1995)); *see also Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir.1978). The movant "must support the transfer application with an affidavit containing detailed factual statements relevant to the factors [to be considered by the court in its transfer decision], including the potential principal witnesses expected to be called and a general statement of the substance of their testimony." *Hernandez v. Graebel Van Lines,* 761 F.Supp. 983, 987 (E.D.N.Y.1991).

■ The inquiry on a motion to transfer is two-fold. The court must first determine whether the action sought to be transferred is one that "might have been brought" in the transferee court. Second, the court must determine whether, considering the "convenience of parties and witnesses" and the "interest of justice," a transfer is appropriate. *Wilshire,* 976 F.Supp. at 180.

As to the first query, the parties do not dispute that the Northern District is a district where the action might have originally been brought. Therefore, it is only the second inquiry that requires examination.

■ In determining whether transfer is warranted "for the convenience of the parties and witnesses [and] in the interest of justice" under § 1404(a), courts generally consider several factors. The factors to be considered in the instant case, as outlined by the court in *Wilshire,* include (1) the convenience of witnesses, (2) the location of relevant documents and the relative ease of access to sources of proof, (3) the convenience of the parties, (4) the locus of operative facts, (5) the availability of process to compel the attendance of unwilling witnesses, (6) the relative means of the parties, (7) the forum's familiarity with the governing law, (8) the weight accorded the plaintiff's choice of forum, and (9) trial efficiency and the interest of justice, based on the totality of the circumstances. *Id.* at 181; *see Constitution Reinsurance Corp. v. Stonewall Ins. Co.,* 872 F.Supp. 1247, 1250 (S.D.N.Y.1995); *Cento Group, S.p.A v. OroAmerica, Inc.,* 822 F.Supp. 1058, 1060 (S.D.N.Y.1993).

### B. *The Relevant Factors Applied*

■ Application of the nine factors reveals that DST falls short of meeting its burden under § 1404(a).

#### 1. *Convenience of Witnesses*

According to DST, most of its witnesses work and reside in the Northern District. DST alleges that the current venue would cause inconvenience and a greater cost to the probable fact witnesses, as well as additional unnamed witnesses, it may wish to call. DST, in addition, asserts that denial of the instant motion would create inconvenience regarding child care and exacerbate transportation problems. However, DST fails to support with fact its assertion of the "incalculable corollary inconvenience" caused to children of unnamed witnesses.

■ Vague generalizations and failure to clearly specify the key witnesses to be called, along with a statement concerning the nature

of their testimony, are an insufficient basis upon which to grant a change of venue under § 1404(a). *See Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir.1989). Furthermore, DST does not specify the materiality of the testimony of the "probable" witnesses, nor whether their presence would be necessary for trial. While it is true that in many situations the "'unavailability of compulsory attendance of . . . key witnesses is a compelling reason to transfer the case,'" deposition testimony is an available alternative to live testimony. *Austin*, 739 F.Supp. at 208 (*quoting Ruth Hoppe v. G.D. Searle & Co.*, 683 F.Supp. 1271, 1276 (D.Minn.1988)).

■ The one fact DST does convey is that the drive to Albany from DST's business location takes an hour whereas the drive to New York City takes at least two hours. This extra hour's drive does not warrant transfer of this case. Because many of Orb's key witnesses reside in New York City, Albany would arguably tip the balance of convenience in DST's favor. As stated in *Wilshire*, plaintiff's choice of forum should not be disturbed "[w]here transfer would merely shift the inconvenience from one party to the other." *Wilshire*, 976 F.Supp. at 182. Without a specific list of the witnesses to be called from the movant DST, the balance of the evidence available to date does not require disruption of Orb's choice of forum. *See Hubbell*, 883 F.Supp. at 963.

### 2. Location of Documents and Ease of Access to Sources of Proof

While the Northern District may be closer to evidentiary materials in the possession of DST, according to Orb, many of Orb's documents and other evidence are located elsewhere. Transfer of venue to the Northern District would not make the examination of Orb's evidence easier for DST than it is currently. In addition, DST has defended this action for over a year without complaint of inconvenience on this ground. DST's mere statement that corporate records of both DST and, "on information and belief",

Nova are located in the Northern District,[3] without further evidence of the proof required, is insufficient to command a transfer.

### 3. Convenience of the Parties

DST urges that it will be inconvenienced if forced to litigate this case in the Southern District, claiming, once again, that Albany is one hour closer in driving time from its place of business than is New York City, and that litigation in the Southern District inflicts a greater loss of work time and compounds child care and staffing problems. Yet it is curious that although DST must have been aware of this inconvenience for over one year, it did nothing; the case progressed in the Southern District where court appearances were made, discovery filed, motions heard, and orders entered by this Court.

Viewing this factor from Orb's perspective reveals that the Southern District is more convenient for Orb than the Northern District. Orb points out that New York City is, for all intents and purposes, the center of the toy industry world, and Orb and Nova, as well as DST, frequently travel to New York City to conduct business. Orb states that it finds it easier to fly to New York City than to fly to Albany. Thus, DST has not shown the interest of the parties will be better served by a transfer.

### 4. Locus of Operative Facts

At first glance, this factor appears to weigh in favor of DST. After all, DST does not have a business location in the Southern District and the alleged trademark infringement arguably emanated from the Northern District, excepting actions arising from interstate commerce. However, Orb complains of DST's use of the marks *Heaven's Orb* and *Heaven's Pendant* in the Southern District and in interstate commerce. Orb notes that a substantial portion of the wrongful acts of DST occurred in the Southern District, namely at a Toy Fair in New York City. According to Orb, DST's conduct and activities in the Southern District are key elements of its case. Transfer, therefore, cannot be based on this factor.

3. Although Nova, the subsidiary of Orb, is located in the Northern District, Orb itself is located in Nova Scotia.

### 5. Availability of Process to Compel Attendance of Unwilling Witnesses

The court could compel attendance in either forum, so this factor does not favor either district.

### 6. Relative Means of the Parties

DST represents that it is a small toy company which showed a loss last year and that double litigation has resulted in extreme financial hardship. DST also asserts that Orb itself is a relatively tiny company, albeit larger and better funded than DST, and that both Orb and Nova are better able to bear the costs of litigation than DST. Upon these statements, DST requests the consideration of this factor to weigh in its favor. DST's representations do not support a finding on this factor in favor of transfer, particularly in light of DST's unsupported allegation as to the relative means of Orb.

Where disparity exists between the parties, such as an individual plaintiff suing a large corporation, the relative means of the parties may be considered. *Hernandez*, 761 F.Supp. at 989. However, where proof of such disparity is not adequately provided, or does not exist, this is not a significant factor to be considered. *Cf. CIS of Pine Bluff, Inc. v. Alltel Cellular Assocs. of Arkansas Ltd. Partnership*, 175 B.R. 834, 838 (S.D.N.Y. 1994) (finding where both corporate parties are substantial, relative wealth need not be considered). Even so, DST makes no representation that a transfer of venue would alleviate its extreme financial hardship, although it seems to contend by inference that consolidation of the Northern District and Southern District actions would. The consolidation issue is not before the Court.

### 7. Forum's Familiarity with Governing Law

It is assumed that the federal courts in both this district and the Northern District are equally familiar with the legal principles necessary to resolve this case. Accordingly, this factor does not favor either party.

### 8. Weight Accorded Plaintiff's Choice of Forum

Generally, plaintiff's choice of forum is entitled considerable weight, and should not be disturbed unless the balance of the several factors is strongly in favor of the defendant. *See Kolko v. Holiday Inns, Inc.*, 672 F.Supp. 713, 715 (S.D.N.Y.1987). Where the factors are equally balanced, the plaintiff is entitled to its choice of forum. *See Teachers Ins. and Annuity Ass'n of America v. Butler*, 592 F.Supp. 1097, 1106 (S.D.N.Y. 1984). Further, the plaintiff's choice is generally accorded more deference where there is a material connection or significant contact between the forum state and the underlying events allegedly underlying the claim, *see Levitt v. State of Maryland Deposit Ins. Fund Corp.*, 643 F.Supp. 1485, 1493 (E.D.N.Y.1986), or where the plaintiff is a resident of the forum district. *See, e.g., AMVEST Capital Corp. v. Banco Central, S.A.*, 628 F.Supp. 1258 (1986).

A transfer of venue in this case would serve to shift the inconvenience from one party to another. This is not the test for § 1404(a). *See Wilshire*, 976 F.Supp. at 182 (finding that plaintiff's choice should not be disturbed if transfer would shift inconvenience from defendant to plaintiff). Orb demonstrates that it has extensive and ongoing business activities in the Southern District, that a substantial amount of the wrongful activity alleged in the Complaint occurred in the Southern District, and that key witnesses for Orb reside in this district. Orb itself is situated in Nova Scotia. That its subsidiary Nova is stationed in the Northern District does not negate the convenience of the Southern District for Orb. Accordingly, DST's accusations regarding Orb's motives for choosing the Southern District as the venue in which to litigate this action—for example, to double DST's litigation fees and defense costs—deserves no discussion.

### 9. Trial Efficiency

This factor may seem to weigh in favor of transfer due to the action filed against DST in the Northern District. DST suggests that there is a substantial duplication of claims in the two cases, and that the Northern District action substantially overlaps the facts inher-

ing in the instant case. It would appear that two trials would result in a waste of judicial economy and effort. However, according to McCann, the plaintiff in the Northern District case, both cases arise from entirely different complaints against DST with two different plaintiffs.

McCann's case is grounded upon patent infringement, interference with business relationships, and breach of fiduciary duty. The focus of the case at bar, however, is trademark infringement. Furthermore, the instant case has progressed in the Southern District since December 1996 when the original complaint was filed. As noted above, court appearances have been made by the parties, discovery has been filed, motions have been heard, and orders have been entered.

Thus, this factor weighs in favor of denying transfer to the Northern District. That DST filed similar counterclaims in each case does little to alter the result.

In light of the foregoing analysis and consideration of the totality of the circumstances, the interests of justice require that transfer to the Northern District pursuant to § 1404(a) be denied.

### III. DST's May Not Amend Its Answer to Include the Defense of Improper Venue

█ Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend a pleading should "be freely given when justice so requires." Leave to amend should not be granted, however, if it is sought for such reasons as "bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of the amendment, etc." *Forman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *see also Nerney v. Valente & Sons Repair Shop*, 66 F.3d 25, 28–29 (2d Cir.1995) ("Undue delay and futility of the amendment, among other factors, are reasons to deny leave." (*quoting John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir.1994))).

█ Dilatory motive and failure to cure deficiency by amendments previously allowed are factors in this case. DST's waiver of any potential objection to venue occurred over one year ago. DST filed its Answer to Orb's Complaint on February 26, 1997. Furthermore, it filed two Amended Answers, one on February 26, 1997, and the other on June 30, 1997. DST's delay in filing this motion for over one year after it ostensibly knew, or should have known, of the existence of improper venue, suggests dilatory motive. DST claims it relied on Orb's mistaken belief as to the location of DST's business, as well as DST's counsel's own mistake in noting the Tivoli, New York, mailing address in making a determination of proper venue in the Southern District. Either way, none of the principals of DST expressed any problem regarding the Southern District venue until now.

As established above, the venue objection has been waived, and DST has not provided sound reasons for why justice would require amendment in this case. Thus, DST's leave to amend to include improper venue as a defense is denied.

### Conclusion

For the foregoing reasons, DST's motion to transfer this action to the Northern District of New York is denied.

It is so ordered.