■ CORPORATE CAMPAIGN, INC., Appellant, v LOCAL 7837, UNITED PAPERWORKERS INTERNATIONAL UNION, by Its President, FERMAN E. SHARP, et al., Respondents. [697 NYS2d 37] —Order, Supreme Court, New York County (Charles Ramos, J.), entered April 17, 1998, granting defendants' motion to dismiss the complaint for lack of personal jurisdiction under CPLR 302 (a) (1), unanimously reversed, on the law, without costs, defendants' motion denied, and the complaint reinstated.

The issue to be decided in this appeal is whether New York has jurisdiction over the parties' breach of contract action. Plaintiff is a New York corporation that specializes in doing research, fund-raising and public relations on behalf of unions involved in labor disputes. Its primary service is the "corporate campaign," in which plaintiff works with a union to put pressure on the employer by targeting the employer's customers, suppliers, shareholders, lenders and affiliates, so as to bring nationwide publicity to a local dispute. Significantly, the targets of such a corporate campaign are not necessarily located in the labor union's home State.

Defendant Local 7837 (defendant or the Union) is headquartered in Decatur, Illinois. The Union has no office, bank account or telephone number in New York, nor does it represent any employees located in this State. The Union contracted with plaintiff on August 5, 1992, to wage a corporate campaign against companies affiliated with corn syrup manufacturer A.E. Staley Manufacturing Co. The contract was drafted and executed by plaintiff in New York and executed by defendant in Illinois. The parties negotiated subsequent agreements in November 1992 and June 1993. Defendant terminated the contract in January 1995. On or about January 24, 1997, plaintiff brought this action to recover fees in excess of $600,000 allegedly owed to it under the contract. Defendant successfully argued on the motion that its contacts with New York were insufficient to support long-arm jurisdiction under CPLR 302 (a) (1). However, we disagree.

CPLR 302 (a) (1) confers in personam jurisdiction over a non-domiciliary if the non-domiciliary transacts business within New York State and the claim arises out of that transaction. Even one instance of purposeful activity directed at New York is sufficient to create jurisdiction, whether or not defendant was physically present in the State, as long as that

activity bears a substantial relationship to the cause of action (*Kreutter v McFadden Oil Corp.*, 71 NY2d 460, 467). However, jurisdiction cannot be predicated solely on the plaintiff's acts within the State (*Laufer v Ostrow*, 55 NY2d 305, 312).

Here, defendant has clearly had substantial contacts with New York in connection with the contract that is the subject of the instant dispute. Defendant's representatives made no less than 12 trips to New York to assist plaintiff in making contacts with other labor unions in this State, organizing rallies and raising funds (*Fabrikant & Sons v Adrianne Kahn, Inc.*, 144 AD2d 264, 265 [jurisdiction based on visit to State plus subsequent communications]). Through daily communication by telephone, fax and mail, defendant exercised close control over plaintiff's design and implementation of the corporate campaign (*Courtroom Tel. Network v Focus Media*, 264 AD2d 351, 352-353). Since defendant requested performance of plaintiff's New York activities for defendant's benefit, and was intimately involved in the implementation of plaintiff's campaign, plaintiff's work on defendant's behalf may be attributed to defendant for jurisdictional purposes (*Otterbourg, Steindler, Houston & Rosen v Shreve City Apts.*, 147 AD2d 327, 332).

Moreover, New York was the focal point of plaintiff's corporate campaign on defendant's behalf. While defendant claims that the choice of locale was purely a matter of plaintiff's convenience, the record simply does not support the motion court's finding that the services could have been performed anywhere (*compare, Milliken v Holst*, 205 AD2d 508, 510). New York was home to four of the five major targets of the campaign—Staley's most high-profile affiliate, one of its biggest customers, a major institutional investor and an insurance company with financial ties to Staley. Plaintiff submitted affidavits by former officers of the Union attesting to the fact that the Union contemplated significant activity by plaintiff in New York because numerous target companies, Union allies, the pro-labor press and major media outlets were all concentrated here.

In sum, this is not a case where the defendant's only connection to New York occurred through the plaintiff's unilateral acts rather than through defendant's conscious choice (*compare, Hanson v Denckla*, 357 US 235). On the contrary, defendant purposely directed plaintiff, a New York public relations firm, to capitalize on the high concentration of targets and supporters in the State where plaintiff's office was located (*see, Courtroom Tel. Network v Focus Media, supra*, at 353, 354 [defendants who purposefully avail themselves of New York's

concentration of media outlets should be subject to long-arm jurisdiction]).

Defendant unconvincingly argues that its admitted participation in the corporate campaign in New York should not be deemed "transacting business" for purposes of CPLR 302 (a) (1) because this is not the regular business of the Union. A union's business is not limited to representing employees in collective bargaining negotiations, but also includes fund-raising, public relations and economic pressure tactics to advance its members' interests—precisely the services performed by plaintiff with defendant's active participation. More generally, the execution and performance of a contract constitute business activities, and this action directly arises out of an alleged breach of said contract (*Schneider v J & C Carpet Co.*, 23 AD2d 103, 105). The complaint should therefore be reinstated. Concur—Rosenberger, J. P., Tom, Mazzarelli, Lerner and Friedman, JJ.